# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER BROWN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 10-cv-6558 |
| v. | ) ) | Judge Elaine E. Bucklo |
| JOHN P. CALAMOS, SR., Trustee of the Calamos Convertible Opportunities and Income Fund, et al., | ) ) ) ) | Magistrate Judge Sheila M. Finnegan |
| Defendants. | ) ) | |

## FUND DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF JOINT MOTION TO DISMISS

Defendants Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David D. Tripple (collectively, the "Independent Trustees") and Calamos Convertible Opportunities and Income Fund (together with the Independent Trustees, the "Fund Dependants") have joined with defendants John P. Calamos, Sr., Calamos Advisors LLC and Calamos Asset Management, Inc. (the "Calamos Defendants") in the submission of a proposed Omnibus Memorandum in support of their Joint Motion to Dismiss the Complaint on the ground that the claims asserted therein are precluded by the Securities Litigation Uniform Standards Act of 1998, 15 U.S.C. §77p, §78bb ("SLUSA").  The Fund Defendants respectfully submit this Supplemental Memorandum in support of the alternative grounds set forth in the Joint Motion to Dismiss seeking the dismissal, as to them, of any claims in the Complaint that may survive SLUSA preclusion.  Those alternative grounds are as follows:  (i) that any claims derivative in nature should be dismissed pursuant to Rule 12(b)(6) and Rule 23.1 of the Federal Rules of Civil Procedure for failure to allege demand on the Board of Trustees of the Fund, or to state with

particularity the reasons Plaintiff should be excused from making demand; (ii) as to Count I of

the Complaint, that dismissal pursuant to Rule 12(b)(6) is required in that, as a matter of law, the

Independent Trustees do not owe the duties alleged in Count I or, if they do owe such duties, the

facts alleged fail to state a claim for breach; and (iii) as to Counts II and III of the Complaint,

that such counts fail to state a claim upon which relief can be granted against the Fund.[1]

## I.   ANY CLAIMS SURVIVING SLUSA PRECLUSION THAT ARE DERIVATIVE IN NATURE MUST BE DISMISSED FOR FAILURE TO COMPLY WITH THE DEMAND REQUIREMENT

As discussed in Section II. A. of Defendants' proposed Omnibus Memorandum, the

Complaint in this case does not plead an "exclusively derivative" action within the meaning of

the exception from SLUSA preclusion set forth in 15 U.S.C. §78bb(f)(5)(C), and that exception

therefore has no application.  However, if any of the claims in the Complaint could be construed

so as to avoid SLUSA preclusion, any surviving claims based upon injuries ostensibly sustained

*by the Fund* as a consequence of the redemption of the AMPS would be derivative in nature.  *See*

the authorities cited in Defendants' proposed Omnibus Memorandum at 13-14.  Such asserted

injuries to the Fund are alleged in Complaint Paragraphs 29 (redemption of AMPS at prices

exceeding "market value"); 31 (a)-(c) and 34 (a) (debt financing at assertedly higher cost to the

---

[1]   Although the law in this area is unsettled, a very recent decision on the subject holds that "a federal court may exercise supplemental jurisdiction over any claims not preempted by SLUSA, in an action in which certain state law claims are preempted, pursuant to 28 U.S.C. § 1367(a)." *Feiner Family Trust v. Xcelera Inc.*, No. 10 C 3431, 2010 WL 3184482, *5 (S.D.N.Y. Aug. 9, 2010).  Alternatively, this Court may choose to remand any remaining claims to the Circuit Court.  *Winne v. The Equitable Life Assurance Society of the United States*, 315 F.Supp. 2d 404, 416 (S.D.N.Y. 2003) (claims not precluded by SLUSA may be adjudicated by federal court or remanded to state court).  Defendants respectfully submit that the interests of judicial economy would be served by this Court's retention of jurisdiction over any claims that might for some reason survive SLUSA preclusion, and therefore have raised their alternative grounds for dismissal in this Court.  Defendants also believe it is appropriate for them to state their alternative grounds for dismissal at this time so that Plaintiff cannot later assert, in the event one or more claims are remanded to state court, that those grounds somehow have been waived.

Fund, and on otherwise less favorable terms, than AMPS); 34 (b)-(d) (reduced Fund cash flow);

and 57 (fees and other payments made by the Fund). It would be necessary to dismiss any such

claims for failure to make and plead demand upon the Board of the Fund prior to filing suit, or to

state with particularity the reasons why Plaintiff failed to make demand, as required by Rule 23.1

of the Federal Rules of Civil Procedure, Delaware Chancery Court Rule 23.1, and Illinois'

demand statute, Section 7.80(b) of the Business Corporation Act of 1983 (805 ILCS 5/7.80(b)).

The requirement of shareholder demand prior to the assertion of derivative claims is more

than a pleading requirement; it is a substantive right of the shareholders and directors. *In re

Abbott Laboratories Derivative Shareholders Litigation,* 325 F.3d 795, 804 (7th Cir. 2003).[2]

"Because directors are empowered to manage, or direct the management of, the business and

affairs of the corporation, the right of a stockholder to prosecute a derivative suit is limited to

situations where the stockholder has demanded that the directors pursue the corporate claim and

they have wrongfully refused to do so or where demand is excused because the directors are

incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d

927, 932 (Del. 1993) (citation omitted). Pursuant to Rule 23.1 of the Federal Rules of Civil

Procedure, a plaintiff asserting a claim derivatively must "allege with particularity the efforts, if

any, made by the plaintiff to obtain the action the plaintiff desires from the directors. . .and the

reasons for the plaintiff's failure to obtain the action or for not making the effort." *In re Abbott,*

325 F.3d at 803-04 (citing Fed. R. Civ. P. 23.1). Where, as here, demand has *not* been made, the

---

[2]    The law of the state of incorporation controls these substantive rights and governs what
excuses are adequate for failure to make demand. *Id.* (citing *Kamen v. Kemper Fin. Servs., Inc.*,
500 U.S. 90, 98-99 (1991)). Accordingly, in a case involving a Delaware statutory trust, a court
will look to the law of Delaware to determine whether the allegations of the complaint are
sufficient to meet the substantive requirements of pre-suit demand. *See Hale v. China Online,
Inc.*, No. 08 C 5548, 2009 WL 2601357, *3 (N.D. Ill. Aug. 21, 2009).

action must be dismissed unless the shareholder alleges, *with particularity*, facts sufficient to establish that demand would be futile, and thus should be excused, because a majority of the board is unable to respond objectively to a demand. *Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984) (overruled on other grounds). Plaintiff has not alleged any facts supporting demand futility. Accordingly, any claims surviving SLUSA preclusion that are derivative in nature should be dismissed.

## II.     COUNT I OF THE COMPLAINT FAILS TO STATE A CLAIM AGAINST THE INDEPENDENT TRUSTEES FOR BREACH OF FIDUCIARY DUTY

Count I of the Complaint asserts that the Trustees breached asserted fiduciary duties to the common shareholders of the Fund by authorizing redemption of the AMPS. (Compl. ¶ 3) Plaintiff's bases for this charge are wholly conclusory (*id.*), unsupported (the Complaint nowhere alleges, for example, that any of the Trustees owned AMPS so as to have benefited personally from the redemptions), or speculative ("they did so … ***likely*** as an attempt to placate their investment banks and brokers …," Compl. ¶ 27 (emphasis added)). Such allegations do not meet even the basic pleading standards set forth in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and its progeny. *See SEC v. Benger*, 697 F. Supp. 2d 932, 937 (N.D. Ill. 2010) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "[A] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citations omitted).

Under the pleading standards set by the Supreme Court, a complaint that pleads facts "merely consistent with a defendant's liability. . . stops short of the line between possibility and plausibility of entitlement to relief." *Id.* Furthermore, conclusory allegations and formulaic recitations of the elements of a given claim will not suffice. *Twombly*, 550 U.S. at 555; *see also*

*Iqbal*, 129 S.Ct. at 1949 ("a complaint [does not] suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement' ").   A court need not accept as true conclusions of law, conclusions unsupported by the facts alleged, or unwarranted factual inferences.  *Twombly*, 550 U.S. at 555.  Here, the Complaint is devoid of well pleaded factual allegations giving rise to a reasonable inference that the Independent Trustees' authorization of the AMPS' redemption constituted a breach of fiduciary duty, rather than a reasoned exercise of their business judgment.  Consequently, Count I of the Complaint fails to state a claim for breach of fiduciary duty.

Moreover, as a Delaware statutory trust (Compl. ¶1), the Fund has taken steps to protect its Trustees from baseless claims of the sort asserted in this case.  The governing instrument of a Delaware statutory trust defines the duties and liability, if any, of trustees for breach of fiduciary duties.  *Cargill, Inc. v. JWH Special Circumstance LLC*, 959 A.2d 1096, 1112 (Del. Ch. 2008).  Under the Delaware Statutory Trust Act (the "Act"):

> "A governing instrument may provide for the limitation or elimination of any and all liabilities for breach of contract and breach of duties (including fiduciary duties) of a trustee, . . . to a statutory trust or to another trustee or beneficial owner . . . provided, that a governing instrument may not limit or eliminate liability for any act or omission that constitutes a bad faith violation of the implied contractual covenant of good faith and fair dealing."

12 Del. C. § 3806(e).

The Amended and Restated Agreement and Declaration of Trust (the "Declaration") is the governing instrument of the Fund.[3]  Pursuant to the authority conferred by the Delaware

---

[3]   The Declaration, effective on September 13, 2006 (see Exhibit 99a.1 to Amendment to Registration Statement filed with the SEC on Form N-2, February 22, 2008, *available at* http://www.sec.gov/Archives/edgar/data/1171471/000095013708002621/c19270a2exv9968995e x99-a_1.txt), is in all respects discussed in this section identical to the Fund's original Agreement and Declaration of Trust dated April 17, 2002, Exhibit 99a.1 to the Fund's Registration Statement filed on April 22, 2002, *available at*

Statutory Trust Act, Article IX, Section 9 of the Declaration excludes fiduciary or other standards, as well as limitations on the acts or powers of the Trustees, inconsistent with the authority, powers and limitations of liability established in the Declaration:

> "<u>Applicable Law</u>. This Declaration and the Trust created hereunder are governed by and construed and administered according to the Delaware Act and the applicable laws of the State of Delaware; provided, however, that *there shall not be applicable to the Trust, the Trustees* or this Declaration of Trust . . . *any provisions of the laws (statutory or common) of the State of Delaware* (other than the Delaware Act) *pertaining to trusts which relate to or regulate . . . the establishment of fiduciary or other standards of responsibilities or limitations on the acts or powers of trustees*, *which are inconsistent with the limitations of liabilities or authorities and powers of the Trustees* set forth or referenced in this Declaration." (Emphasis supplied)

The Complaint in this case completely ignores the governing Declaration, instead alleging that the Trustees were subject to and breached asserted fiduciary duties "not to unfairly favor the interest of one class of shareholders over another;" "not to cause one class of shareholders to receive a benefit greater than that to which they are entitled at the expense of another class of shareholders;" and "not to engage in conduct that frustrates the ability of the common shareholders to realize the benefits of an investment in the Fund . . . ." (Compl. ¶¶ 42-45) Plaintiff cannot state a state a claim for breach of any such asserted "fiduciary duties" which would conflict with, and would impose limitations upon, the authorities and powers granted to the Trustees under the Declaration, which include the authority and power "[t]o borrow money;" "[t]o. . . *redeem*. . . Shares;" "to establish terms and conditions regarding. . .*redemption*. . .of. . .Shares;" and "to apply to any such. . .*redemption*. . .of Shares *any funds or property of the Trust*.

---

http://www.sec.gov/Archives/edgar/data/1171471/000095013702002336/c68995ex99-a_1.txt. The Court may consider the Declaration in ruling on the Fund Defendant's Motion to Dismiss. *See* Defendants' Omnibus Memorandum at 4, n. 3.

. . ."  (Declaration Art. II, Section 2(f), (v)) (emphasis supplied)  Count I should be dismissed for this additional reason.[4]

As permitted by the Section 3806(e) of the Act, the Declaration also narrowly limits the liability of the Fund's Trustees:

> "Provided they have exercised reasonable care and have acted under the reasonable belief that their actions are in the best interest of the Trust, *the Trustees* and officers of the Trust *shall not be responsible for any act or omission or for neglect or wrongdoing*. . . [except] liability . . . to which he would otherwise be subject by reason of willful misfeasance, bad faith, gross negligence or reckless disregard of the duties involved in the conduct of his office."

(Declaration Art. IV, Section 2 (emphasis supplied))  Thus, even if the Trustees owed the "fiduciary duties" alleged in Count I, no liability for breach of any such duties could exist absent "willful misfeasance, bad faith, gross negligence, or reckless disregard of the duties involved in the conduct of [their] office."  *Id*.  Here, Plaintiff has failed to allege that any of the Trustees' actions violated this standard.

Moreover, the business judgment rule serves to protect the role of the Board of a Delaware business entity as the ultimate manager of its affairs.  The rule operates "to preclude a court from imposing itself unreasonably on the business and affairs" of a business entity.  *Shaper v. Bryan*, 371 Ill. App. 3d 1079, 1086-87, 864 N.E. 2d 876, 883, 309 Ill. Dec. 635, 642 (1st Dist.

---

[4]  As noted above, Section 3806(e) of the Act prohibits a Delaware statutory trust from limiting or eliminating the implied contractual covenant of good faith and fair dealing.  12 Del. C. §3806(e).  General allegations of bad faith do not state a cognizable claim for breach of the covenant of good faith and fair dealing.  *Kelly v. Blum*, No. 4516-VCP, 2010 WL 629850, *13 (Del. Ch. Feb. 24, 2010) (interpreting identical language in the Delaware Revised Uniform Limited Partnership Act, 6 Del. C §17-1101(f)).  Instead, a plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damages.  *Id.*  Here, Plaintiff has not attempted to allege a breach of the covenant of good faith and fair dealing, nor does the Complaint contain any allegations supporting such a claim.

2007) (applying Delaware law); *Off v. Ross*, No. 3468-VCP, 2008 WL 5053448, *11 (Del. Ch. Nov. 26, 2008) (applying the business judgment rule to a Delaware Statutory Trust). Pursuant to the business judgment rule, the Trustees are afforded a strong presumption that they "acted independently, with due care, in good faith, and in the honest belief that its actions were in the best interests of the stockholders." *Off*, 2008 WL 5053448 at *11. To rebut this presumption, Plaintiff would be required to allege with particularity "fraud, bad faith or self-dealing in the usual sense of personal profit or betterment" on the part of the Trustees. *Shaper*, 371 Ill. App. 3d at 1087, 846 N.E. 2d at 884, 309 Ill. Dec. at 643 (citing *In re The Walt Disney Company*, 907 A.3d at 747). The Complaint contains no well-pleaded allegations that could possibly meet this standard.

At the end of the day, shorn of its allegations of misrepresentation, Plaintiff's Complaint is that the Trustees made a business decision to replace the AMPS with a different form of leverage, a decision with which the Plaintiff disagrees.[5] Such business decisions are the province of the board, and generally are not subject to review on their merits by courts. *See, e.g.*, *Weiss v. Samsonite Corp.*, 741 A.2d 366, 372 (Del. Ch. 1999) (board's decision to structure a transaction in a particular manner was "not for this Court to decide, because questions concerning the structure of a transaction, or what the resulting debt to equity ratio of the firm should be, are reserved to the board"); *Bergeron v. Ridgewood Securities Corp.*, 610 F. Supp. 2d 113 (D. Mass. 2009) (applying Delaware law) (holding that selection of investments by a Delaware Statutory

---

[5] Plaintiff also contends that the AMPS should not have been redeemed at their full liquidation preference. (Compl. ¶ 43) What this overlooks is that the AMPS could not be redeemed *except* at their liquidation preference. *See* Prospectus, Calamos Convertible Opportunities and Income Fund, filed with the SEC on November 13, 2003, at 41 (referenced in paragraph 2 of the Complaint), *available at* http://www.sec.gov/Archives/edgar/data/1171471/000095013703005922/c79259fe497.txt (stating the "price per share will be $25,000 per share, plus an amount equal to the accumulated but unpaid dividends thereon" in the event the Fund redeems AMPS "without the consent of the holders of AMPS").

Trust would be protected by the business judgment rule). Count I of the Complaint therefore should be dismissed for failure to state a claim for breach of fiduciary duty.

## III. COUNTS II AND III OF THE COMPLAINT FAIL TO STATE CLAIMS AGAINST THE FUND

Counts II and III of the Complaint purport to assert claims for aiding and abetting breach of fiduciary duty and unjust enrichment, respectively, against the "Calamos Defendants," a term which is defined to include the Fund. (Compl. ¶ 6C) Whether the inclusion of the Fund in these Counts was deliberate or unintentional, it surely is illogical. The Complaint alleges that the Fund is managed by the Individual Defendants (Compl. ¶ 6), and that their decision to authorize the redemption of the AMPS was not in the interest of the Fund (Compl. ¶ 27) – – allegations which contradict any contention that the Fund somehow "willfully and knowingly" *aided and abetted* a supposed breach of fiduciary duty. Count III, in turn, seeks to recover *from* the Fund fees *paid by the Fund* to Calamos Advisors LLC or Calamos Asset Management, Inc. But how could the Fund have been "unjustly enriched" by fees *it* paid? The Complaint offers no explanation.

In further support of its motion to dismiss Counts II and III of the Complaint, the Fund adopts and incorporates by reference the arguments set forth in the Calamos Defendants' Supplemental Memorandum in Support of Joint Motion to Dismiss, which further demonstrate the pleading deficiencies in those Counts and support the dismissal of Counts II and III of the Complaint as to the Fund, as well.

## CONCLUSION

The Fund Defendants respectfully request that in the event the Complaint is not dismissed in its entirety pursuant to SLUSA, the Court enter an Order dismissing any claims surviving SLUSA preclusion with prejudice for the reasons stated herein, and grant the Fund Defendants such other relief as the Court deems proper.

Dated:    November 4, 2010                    Respectfully submitted,

                                              Weston W. Marsh, Joe F. Hanauer, John E.
                                              Neal, William R. Rybak, Stephen B. Timbers,
                                              David D. Tripple, and the Calamos
                                              Convertible Opportunities and Income Fund

John W. Rotunno                               By:  /s/ John W. Rotunno
Paul J. Walsen                                        One of Their Attorneys
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
(312) 372.1121
(312) 345.9060

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that he caused the foregoing *Fund Defendants'
Supplemental Memorandum in Support of Joint Motion to Dismiss* to be served automatically via
CM/ECF to the following counsel of record:

Carol V. Gilden
Cohen Milstein Sellers & Toll PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603

Steven J. Toll
Joshua S. Devore
Joshua M. Kolsky
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005

Lynn L. Sarko
Keller Rohrback, P.L.C.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101

Gary Gotto
James A. Bloom
Keller Rohrback, P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012

                                        /s/  John W. Rotunno
                                        John W. Rotunno