**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER BROWN, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 10-cv-6558 |
| v. | ) ) | Judge Elaine E. Bucklo |
| JOHN P. CALAMOS, SR., Trustee of the Calamos Convertible Opportunities and Income Fund, et al., | ) ) ) ) ) | Magistrate Judge Sheila M. Finnegan |
| Defendants. | ) ) | |

**JOINT RESPONSE OF FUND DEFENDANTS AND CALAMOS
DEFENDANTS IN OPPOSITION TO MOTION TO REMAND**

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602-4207
Telephone: 312.372.1121
Facsimile: 312.827.8000

    *Attorneys for defendants
    Weston W. Marsh, Joe F. Hanauer,
    John E. Neal, William R. Rybak,
    Stephen B. Timbers, David D. Tripple
    and the Calamos Convertible Opportunities
    and Income Fund*

Kevin B. Dreher
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

Christian J. Mixter (*pro hac vice*)
Patrick D. Conner (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001

    *Attorneys for defendants John P. Calamos, Sr.,
    Calamos Advisors LLC and Calamos Asset
    Management, Inc.*

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................................ 1

PLAINTIFF'S ALLEGATIONS ................................................................................................ 2

ARGUMENT ................................................................................................................................ 5

I. PLAINTIFF CONCEDES THAT THREE OF THE FOUR CONDITIONS FOR SLUSA REMOVAL ARE SATISFIED ............................................................... 6

II. SLUSA'S FOURTH REQUIREMENT FOR REMOVAL IS SATISFIED ...................... 7

    A. Plaintiff's "Disclaimer" Is Wholly Ineffective ......................................................... 7

    B. Plaintiff's Avoidance Of The Terms "Misrepresentation" Or "Omission" Has No Bearing On SLUSA's Application ..................................................................... 8

    C. SLUSA's "In Connection With" Requirement Also Is Met ................................... 13

CONCLUSION ........................................................................................................................... 14

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

Anderson v. Merrill Lynch Pierce Fenner & Smith, 521 F. 3d 1278 (10th Cir. 2008) ................... 6

Beckett v. Mellon Investor Servs, Inc., No. C06-5245, 2006 WL 3249189 (W.D. Wash.
    Nov. 8, 2006), *aff'd in relevant part*, 329 Fed. Appx. 721 (9th Cir. 2009) ............ 9, 10, 11

Daniels v. Morgan Asset Mgmt., Inc., No. 09-cv-2800, 2010 WL 4024604 (W.D. Tenn.
    Sept. 30, 2010) ................................................................................................................ 8, 10

Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp. 2d 684 (S.D.N.Y. 2006) .................. 9

In re Mut. Funds Inv. Litigation, 309 Fed. Appx. 722 (4th Cir. 2009) ........................................ 11

Kircher v. Putnam Funds Trust, 398 Ill. App. 3d 664, 922 N.E.2d 1164, 337 Ill. Dec. 587
    (5th Dist. 2010) .............................................................................................................. 11, 12

Kircher v. Putnam Funds Trust, 403 F.3d 478 (2005), *rev'd on other grounds*, 547 U.S.
    633 (2006) ............................................................................................................................ 14

Korsinsky v. Salomon Smith Barney, Inc., No. 01-cv-6058, 2002 WL 27775 (S.D.N.Y.
    Jan. 10, 2002) ........................................................................................................................ 8

Kurz v. Fid. Mgmt. & Research Co., No. 07-cv-709, 2008 WL 2397582 (S.D. Ill. June
    10, 2008), *aff'd*, 556 F. 3d 639 (7th Cir. 2009) ................................................................ 7, 9

Kutten v. Bank of America, N.A., 530 F. 3d 669 (8th Cir. 2008) ................................................ 11

Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71 (2006) ..................... 5, 6, 13, 14

Potter v. Janus Investment Fund, 483 F. Supp. 2d 692 (S.D. Ill. 2007) ........................................ 6

Rabin v. JPMorgan Chase Bank, N.A., No. 06-cv-5452, 2007 WL 2295795 (N.D. Ill.
    Aug. 3, 2007) ............................................................................................................ 9, 11, 13

Romano v. Kazacos, 609 F. 3d 512 (2d Cir. 2010) ....................................................................... 9

Segal v. Fifth Third Bank, 581 F.3d 305 (6th Cir. 2009) .................................................... 8, 9, 11

Stoody-Broser v. Bank of America, N.A., No. C08-02705, 2009 WL 2707393 (N.D. Cal.
    Aug. 25, 2009) .......................................................................................................... 9, 11, 12

U.S. Mortgage, Inc. v. Saxton, 494 F.3d 833 (9th Cir. 2007) ...................................................... 14

United States v. O'Hagan, 521 U.S. 642 (1997) ......................................................................... 14

Page(s)

**Statutes**

28 U.S.C. § 1332 ................................................................................................................. 4

15 U.S.C. § 77p .......................................................................................................... passim

15 U.S.C. § 78bb ........................................................................................................ passim

Defendant Calamos Convertible Opportunities and Income Fund and its Independent Trustees, defendants Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers and David D. Tripple, by their attorneys, and defendants John P. Calamos, Sr., Calamos Advisors LLC and Calamos Asset Management, Inc., by their attorneys, respectfully submit this Memorandum in opposition to Plaintiff's motion to remand this action to the Circuit Court of Cook County, Illinois, from which it was removed pursuant to the Securities Litigation Uniform Standards Act, 15 U.S.C. § 77p(b), § 78bb(f)(l) ("SLUSA" or the "Act").

## PRELIMINARY STATEMENT

The Complaint in this case is brought by an investor in common shares of the Calamos Convertible Opportunities and Income Fund (the "Fund"). He purports to sue on behalf of a class of Fund shareholders, claiming a loss in the value of the putative class members' investment in Fund common shares. In summary, the Complaint alleges that the Fund publicly represented that investors in its common shares would benefit significantly from the Fund's use of auction market preferred shares to provide investment leverage and that this form of leverage "would continue indefinitely" (Compl. ¶ 13), but that the Fund instead redeemed those preferred shares in 2008 and 2009 utilizing assertedly less favorable debt financing. This is alleged to have "materially altered the business model of the Fund" described in the Fund's publications, "defeated a significant feature of the investment rationale" attracting investors to common shares in the Fund, and caused the value of common shares to decline. (Compl. ¶¶ 13, 34(d), (e))

Although the Complaint is pleaded in counts asserting breach of fiduciary duty by the Fund's Board of Trustees, aiding and abetting a breach of fiduciary duty, and unjust enrichment, by its terms the Complaint does not purport to be brought as a derivative action on behalf of the Fund, as one would expect of such state law claims. Instead the Complaint is cast as a class

action based upon the Fund's alleged pronouncements concerning the benefits and advantages of an investment in common shares and its alleged assertions that the Fund would "indefinitely" employ auction market preferred shares to provide investment leverage. These allegations, selectively drawn from the Fund's Securities and Exchange Commission ("SEC") filings and other, unidentified public statements, betray Plaintiff's use of state law labels to mask claims predicated upon asserted misrepresentations and nondisclosures in connection with the sale of Fund common shares. They also bring the Complaint into the path of SLUSA, which authorizes the removal of this case to federal court and precludes its maintenance as a class action.

## PLAINTIFF'S ALLEGATIONS

Plaintiff Christopher Brown alleges that he has owned common shares of the Fund since 2006. (Compl. ¶ 5) The Fund is a Delaware statutory trust and a closed-end investment company registered under the Investment Company Act of 1940, as amended (the "ICA"). (Compl. ¶¶ 1, 6(k), 9) The putative class Brown purports to represent is defined to include "all persons and entities that were the beneficial owners of common shares of the Fund at any time from March 19, 2008 through the present. . . ." (Compl. ¶ 35)

Brown alleges that the primary investment objective of the shares he purchased, as described by the Fund in "reports filed with the Securities and Exchange Commission," "is to provide total return through a combination of capital appreciation and current income." (Compl. ¶ 10) According to the Complaint, "materials filed [by the Fund] with the Securities and Exchange Commission. . .or otherwise published to the investing public" described financial leverage as a "key piece of the return to the Fund's common shareholders. . . ." (Compl. ¶ 13) At the time of Brown's purchase of common shares, this leverage was provided by auction

2

market preferred shares ("AMPS")[1] issued by the Fund, which Brown alleges provided the Fund with very favorable financing. (Comp. ¶¶ 12, 13, 24) The beneficial effect of the financing provided by AMPS was "described in the Fund's regular reports to its shareholders." (Id.)

The Complaint alleges that the Fund represented publicly that "one of the significant benefits of. . .[an]. . .investment" in common shares was "leverage that would continue indefinitely, because. . .the term of the AMPS was perpetual." (Compl. ¶ 13) The Fund also is alleged to have publicly stated that "[t]he perpetual nature of the AMPS makes them. . .a more attractive source of leverage than borrowing, which by its terms must be repaid or refinanced at or before a stated maturity date." (Compl. ¶ 31(b)) According to the Complaint, AMPS never had to be repaid, nor were they subject to redemption by the Fund. (Compl. ¶¶ 12(b), 24) On the latter point, Plaintiff alleges that the Fund represented, in a 2003 AMPS prospectus, that "AMPS are not redeemable by the holders of AMPS. . . ." (Compl. ¶ 24)

Notwithstanding these representations, the "Individual Defendants" -- the Independent Trustees of the Fund and John P. Calamos, Sr. (a Trustee and the President of the Fund) -- are alleged to have caused the Fund to redeem its outstanding AMPS in June 2008 and August 2009, and to have replaced the AMPS with debt financing that was not perpetual, and ostensibly is more risky and costly to the Fund than AMPS. (Compl. ¶¶ 3, 25, 30-32) Plaintiff contends that this action deprived common shareholders of "the benefits of an investment in the Fund, as *described in the Fund's statements to the SEC and the public*." (Compl. ¶ 42; emphasis supplied) *See also* Compl. ¶ 45, alleging that redemption of the AMPS "eliminat[ed] one of major benefits of the investment" in common shares.

---

[1] The Complaint refers to the auction rate preferred shares issued by the Fund by two different acronyms, "AMPS" and "ARS." In the interest of clarity and consistency, this Memorandum will refer to the shares as "AMPS."

3

The Complaint claims that the Individual Defendants were motivated to take this action by "economic interests" they supposedly shared with the investment advisor to the Fund and its affiliated holding company (defendants Calamos Advisors LLC and Calamos Asset Management, Inc., collectively referred to in the Complaint as the "Calamos Sponsorship Group"). These "shared economic interests" ostensibly were served by providing liquidity to holders of AMPS following the February 2008 collapse of the auction market in which AMPS were purchased and sold. (Compl. ¶¶ 19, 22-23, 27) Plaintiff contends that the redemption furthered the interests of the Calamos Sponsorship Group and holders of AMPS at the expense of the interests of common shareholders. (Compl. ¶¶ 27, 32)

On July 15, 2010, Plaintiff Brown filed a putative class action Complaint in this Court against each of the Defendants named in this case. The Complaint in that action (N.D. Ill. Case No. 1:10-cv-4422) contained allegations substantively identical to, and pleaded the same claims as, the Complaint in this case, and invoked this Court's jurisdiction under the Class Action Fairness Act ("CAFA"). Plaintiff then thought better of his choice of a federal forum and voluntarily dismissed the case on September 7, 2010. Plaintiff re-filed this action in the Circuit Court of Cook County a week later, alleging that jurisdiction did *not* exist under CAFA because the claims asserted in the Complaint "concern covered securities" -- a reference to the CAFA exclusion (appearing in 28 U.S.C. § 1332 (d)(9)(A)) for cases governed by *SLUSA*. (Compl. ¶ 8)

Defendants removed the action to this Court pursuant to SLUSA on October 13, 2010. On November 4, 2010 the Defendants moved to dismiss the case on the ground that it is precluded by SLUSA[2] and submitted a twenty-page memorandum supporting that ground of their motion. The following day, Plaintiff filed a motion to remand the case. An eight-page

---

[2] Defendants also raised several alternative grounds for dismissal.

4

memorandum accompanying Plaintiff's motion ("Pl's Memo.") consists largely of a rote recital of paragraphs in the Complaint and cites no authority -- not a *single decision of any court* -- supporting Plaintiff's contention that this case is outside SLUSA's broad reach. To the contrary, this action is squarely within the four corners of SLUSA and was properly removed to this Court.

## ARGUMENT

Congress enacted SLUSA in 1998 to prevent class action plaintiffs from using state law legal theories, and state court venues, to evade the heightened pleading standards and other requirements and limitations imposed in securities class actions by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"). Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit, 547 U.S. 71, 81-82 (2006). SLUSA added to the Securities Act of 1933, as amended (the "1933 Act"), and the Securities Exchange Act of 1934, as amended (the "1934 Act"), parallel provisions authorizing the removal and precluding the maintenance of certain class actions brought under state law.[3] As amended by SLUSA, the 1934 Act provides:

> "(1) *Class action limitations.* No covered class action based upon the statutory or common law of any State or subdivision thereof may be maintained in any State or Federal court by any private party alleging--
>
>> (A) a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security; or
>>
>> (B) that the defendant used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security.
>
> (2) *Removal of covered class actions.* Any covered class action brought in any State court involving a covered security, as set forth in paragraph (1) shall be removable to federal district court for the

---

[3] For ease of reference, citations to SLUSA in this Memorandum will be to the provisions of SLUSA appearing in the 1934 Act, unless otherwise appropriate.

>district in which the action is pending, and shall be subject to paragraph (1)."

15 U.S.C. § 78bb(f)(1)-(2). The parallel provision in the 1933 Act uses identical language, with the exception that it employs the phrase "untrue statement or omission of a material fact" in lieu of "misrepresentation or omission of a material fact. . . ." 15 U.S.C. § 77p(b)-(c)

The Supreme Court has emphasized that SLUSA should be given a broad construction to serve SLUSA's stated purpose of preventing the use of state law-based class actions to evade the procedural and substantive protections of the PSLRA, and has applied SLUSA even where a plaintiff's claim would not be actionable under the federal securities laws. Dabit, 547 U.S. at 86 (holding that SLUSA precluded an alleged state law action for breach of fiduciary duty brought on behalf of a putative class comprised of "holders" of securities, even though such persons would not have had a private right of action under Section 10(b) of the 1934 Act and Rule 10b-5 thereunder because they were not alleged to have purchased or sold securities during the class period).[4] Thus, although SLUSA does not preempt individual claims, or claims asserted derivatively, it altogether precludes class actions asserting claims within its scope, even where those claims could not be brought in a private federal securities action because one or more of the elements of such a cause of action is absent. Id.

### I. PLAINTIFF CONCEDES THAT THREE OF THE FOUR CONDITIONS FOR SLUSA REMOVAL ARE SATISFIED

By its terms, SLUSA authorizes the removal of, and precludes, actions meeting four conditions. SLUSA applies where (1) the underlying suit is a "covered class action"; (2) the action is based upon state statutory or common law; (3) the action concerns a "covered security";

---

[4] Similarly, SLUSA applies even though a complaint contains no allegation of scienter -- a requirement in private actions under Section 10(b) of the 1934 Act and Rule 10b-5. Anderson v. Merrill Lynch Pierce Fenner & Smith, 521 F. 3d 1278, 1285 (10th Cir. 2008); Potter v. Janus Investment Fund, 483 F. Supp. 2d 692, 697 (S.D. Ill. 2007).

and (4) the case alleges either "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security," or that the defendant "used or employed any manipulative or deceptive device or contrivance in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1), (2)

Plaintiff concedes that each of the first three conditions for SLUSA removal and preclusion is satisfied in this case. (Pl's Memo. at 2) Thus, it is uncontested that this *is* a "covered class action"; that the action *is* based upon state law; and that the case *does* concern a "covered security" (*i.e.,* Fund common shares). Plaintiff contests only whether the fourth element of SLUSA is satisfied, *i.e.*, whether the Complaint contains allegations of a misrepresentation or omission of material fact in connection with the purchase or sale of Fund common shares. The Complaint unequivocally satisfies this requirement, as well.

## II. SLUSA'S FOURTH REQUIREMENT FOR REMOVAL IS SATISFIED

### A. Plaintiff's "Disclaimer" Is Wholly Ineffective

Plaintiff's primary argument in support of his contention that the Complaint does not allege misrepresentations or omissions of material fact in connection with the purchase of Fund common shares is that the Complaint contains a disclaimer of any intention to assert such a claim. (Pl's Memo. at 2, citing the disclaimer in Compl. ¶ 4) Plaintiff's resort to this disclaimer serves only to underscore the obviousness of SLUSA's application to the Complaint.

The disclaimer in Paragraph 4 of the Complaint is prototypical of what has become a standard averment in pleadings attempting to evade SLUSA removal and preclusion. Numerous decisions hold that such disclaimers are of no effect, and should be disregarded. *See*, *e.g.*, Kurz v. Fid. Mgmt. & Research Co., No. 07-cv-709, 2008 WL 2397582, *3 (S.D. Ill. June 10, 2008), aff'd, 556 F. 3d 639 (7th Cir. 2009) (paragraph in complaint "specifically disclaiming" any allegations of fraud, misrepresentation or omission was ineffective to avoid SLUSA preclusion);

7

Segal v. Fifth Third Bank, 581 F.3d 305, 310-11 (6th Cir. 2009) ("a claimant does not have the . . .ability to disclaim the applicability of SLUSA to a complaint"); Daniels v. Morgan Asset Mgmt., Inc., No. 09-cv-2800, 2010 WL 4024604, *6 (W.D. Tenn. Sept. 30, 2010) (disregarding express disclaimer of any relief based on "an untrue statement or omission of material fact in connection with the purchase, sale, or retention of a security"); Korsinsky v. Salomon Smith Barney, Inc., No. 01-cv-6058, 2002 WL 27775, *4 (S.D.N.Y. Jan. 10, 2002) ("[a]lthough the complaint clearly states that '[t]his is not an action for fraud,' it outlines several instances of alleged misrepresentations"). In short, the first ground for Plaintiffs' Motion to Remand is completely frivolous. The most its presence in the Complaint signifies is Plaintiff's recognition that, absent an effective disclaimer, this putative class action satisfies SLUSA's requirements.

      **B.**      **Plaintiff's Avoidance Of The Terms "Misrepresentation" Or "Omission" Has No Bearing On SLUSA's Application**

Plaintiff next argues that the Complaint does not allege any misrepresentations or omissions in connection with the purchase or sale of Fund shares. (Pl's Memo. at 3-4) He contends that, to the contrary, he has alleged that the various public statements he attributes to the Defendants were true, or at least that he has not overtly alleged that they were untrue. (Plaintiff's Memo. at 3, 4) This contention is just as frivolous as Plaintiff's "disclaimer" argument, for several reasons.

First, it is simply not the case that the Complaint alleges that the statements attributed to the Fund were true. No such allegation appears anywhere in the Complaint.[5]

---

[5] By pointing out this misstatement of the Complaint's allegations, the Defendants do not in any way concede that there was any material failure of disclosure, or any misrepresentation of material fact, as to any matter alleged in Plaintiff's Complaint.

8

Second, the fact that the Complaint does not expressly characterize the statements attributed to Defendants as "misrepresentations" or as untrue is of no consequence. The courts have become accustomed to attempts to evade SLUSA's application by the artful avoidance of the Act's terminology, and hold that such attempts are ineffective. *See, e.g.,* Kurz, 2008 WL 2397582 at *3 (complaint that "scrupulously avoid[ed] using the words fraud, misrepresentation, or omission" was nonetheless precluded by SLUSA); Segal, 581 F. 3d at 310-11 (a claimant cannot "elude SLUSA's prohibitions by editing out the covered words" or using "artful pleading that removes the covered words from the complaint but leaves in the covered concepts").

In applying SLUSA, the courts look to "the realities underlying the claims," not how the claim is cloaked in a complaint. Romano v. Kazacos, 609 F. 3d 512, 523 (2d Cir. 2010). *See also* Rabin v. JPMorgan Chase Bank, N.A., No. 06-cv-5452, 2007 WL 2295795, *6 (N.D. Ill. Aug. 3, 2007) ("[a]ttempt by [p]laintiffs to characterize their allegations of misrepresentation and omission of material facts as claims for breach of fiduciary duty and unjust enrichment is futile"); Felton v. Morgan Stanley Dean Witter & Co., 429 F. Supp. 2d 684, 692-93 (S.D.N.Y. 2006) (holding that court "must look beyond the face of the complaint to analyze the substance of the allegations made," and concluding "that [p]laintiff's claim is a securities fraud wolf dressed up in a breach of contract sheep's clothing"); Beckett v. Mellon Investor Servs, Inc., No. C06-5245, 2006 WL 3249189, *3 (W.D. Wash. Nov. 8, 2006), aff'd in relevant part, 329 Fed. Appx. 721 (9th Cir. 2009) (holding that although there was "no explicit reference [in the complaint] to any fraudulent activity" such as a misrepresentation or omission of material fact, "[o]ne may infer that [p]laintiff has framed the pleading in an effort to avoid SLUSA preemption"); Stoody-Broser v. Bank of America, N.A., No. C08-02705, 2009 WL 2707393, *2-3 (N.D. Cal. Aug. 25, 2009) (same).

Third, as the allegations excerpted in Paragraph 5(d) of Defendants' Notice of Removal (Exhibit A hereto) demonstrate, the undeniable substance of Brown's claim is that investors or prospective investors in Fund common shares were misled as to the benefits of an investment in the shares. The premise of the Complaint is that the Defendants misled common shareholders by representing that the financing provided by AMPS was a "significant benefit[]" they would enjoy "indefinitely" and in "perpetuity," but then redeemed the AMPS and substituted assertedly less favorable financing in its place, ostensibly for the undisclosed purpose of serving the interests of the Calamos Sponsorship Group. Stated differently, the Complaint alleges that the Defendants said one thing, and then did another for undisclosed, allegedly improper reasons. *See* Beckett, 2006 WL 3249189, at \*4 (allegation that fees charged to plaintiff were not authorized by contract "implicitly allege[d] an omission of material fact").

Moreover, plaintiff concedes that the Complaint may "suggest" that Defendants "misrepresented the reasons for their redemptions of AMPS" by failing to disclose that the redemption supposedly was motivated by a desire to "further the business objectives of the Calamos Sponsorship Group. . . ." (Pl's Memo. at 6; Compl. ¶ 27) This alone -- even without consideration of Plaintiff's allegations regarding the allegedly "perpetual" and "indefinite" duration of AMPS financing -- is enough to satisfy the "misrepresentation or omission" element of SLUSA. Daniels, 2010 WL 4024604, at \*9 (rejecting argument that claim was based on "what. . .the defendants *did*," rather than on the defendants' disclosures, observing that the defendants' "undisclosed conflict of interest is precisely what Plaintiffs argue caused Defendants to do what they 'did' ").[6]

---

[6] Plaintiff also claims that the Calamos Sponsorship Group improperly received "fees and other revenues" as a result of the redemption and refinancing of the AMPS. (Compl. ¶ 57) Claims "for excessive fees caused by. . .investments. . .have been universally found to be

In short, all that distinguishes Brown's Complaint from a conventional securities fraud action is its reliance on state law in lieu of Rule 10b-5. The Complaint thus presents a paradigm case for application of SLUSA. Rabin, 2007 WL 2295795, at *6 (analyzing the substance of allegations of breach of fiduciary duty and unjust enrichment asserted by trust beneficiaries, the court found "that at the heart of the Amended Complaint is that Defendants misrepresented and omitted material facts related to the purchase of shares" in the trustee's proprietary mutual fund). *See also* In re Mut. Funds Inv. Litigation, 309 Fed. Appx. 722, 725 (4th Cir. 2009) ("[d]espite their emphatic disavowal of their prior explicit allegations of misrepresentation. . .at bottom the plaintiffs simply allege" a misrepresentation claim precluded by SLUSA); Kutten v. Bank of America, N.A., 530 F. 3d 669, 670-71 (8th Cir. 2008) (holding, in a case where the complaint did not allege omissions of fact or misrepresentations made to plaintiffs, that "SLUSA preemption is based upon the conduct alleged, not the words used to describe the conduct"). [7]

The analysis applied in Kircher v. Putnam Funds Trust, 398 Ill. App. 3d 664, 922 N.E.2d 1164, 337 Ill. Dec. 587 (5th Dist. 2010), is particularly instructive in light of Plaintiff Brown's allegation that Defendants benefitted one class of shareholders (those who owned AMPS) at the expense of another (those who owned common shares of the Fund). In Kircher, a putative class

---

preempted by SLUSA." Stoody-Broser v. Bank of America, N.A., 2009 WL 2707393, at *4. *See also* Beckett, 2006 WL 3249189, at *4 (a "request for recovery of allegedly unlawfully obtained fees and charges. . .[on the]. . .sale of securities is subject to SLUSA preemption").

[7] Plaintiff's Memorandum attempts to minimize the significance of the Complaint's allegations regarding the Fund's public statements by dismissing them as "simply a statement of fact" or "simply statements of information made publicly by the fund." (Pl's Memo. at 3) The courts have rejected similar attempts to evade SLUSA by characterizing misrepresentations as mere background facts. It is of no consequence under SLUSA that allegations of misrepresentation are not material to the state law claims asserted in a complaint. *See, e.g.,* Segal, 581 F. 3d at 311 (contention that "the state-law claims do not depend upon allegations of misrepresentation or manipulation -- and thus are not material to them" was unavailing).

11

of mutual fund shareholders alleged claims sounding in negligence and breach of fiduciary duty arising out of short-term trading or "market timing" in shares of the fund. 398 Ill. App. 3d at 667-68, 922 N.E.2d at 1167, 337 Ill. Dec. at 590. The plaintiffs alleged that although the defendants operated a mutual fund with the stated goal of providing capital growth to long-term investors, they followed portfolio valuation procedures which benefited short-term traders at the expense of long-term shareholders. Id. The plaintiffs argued that SLUSA did not apply because their claims did not sound in misrepresentation or fraud. Id. at 670, 922 N.E.2d at 1169-70, 337 Ill. Dec. at 592-93. The court disagreed, holding that "the plaintiffs' allegations are based, at least implicitly, on the defendants' failure to disclose. . .their method of calculating. . .[net asset value]. . .and the fact that this method has a potential to reward market-timing investors at the expense of long-term investors." Id. at 673-74, 922 N.E.2d at 1171-72, 337 Ill. Dec. at 594-95. The court reasoned that the complaint at bottom alleged a claim for misrepresentation or omission of material fact, noting that if the defendants had disclosed the risks and potential impact of market timing, there could be no claim for negligence or breach of duty. Id.

      The same reasoning applies here. Plaintiff's Complaint alleges that "[t]he Fund's public statements indicated that the holders of its common stock could realize, as one of the significant benefits of this investment, leverage that would continue indefinitely, because. . .the term of the AMPS was perpetual." (Compl. ¶ 13) Plaintiff complains that contrary to the Fund's representations about these and other benefits of AMPS, the Individual Defendants caused the Fund to redeem the AMPS using more costly and comparatively short-term replacement borrowing, thereby "eliminating one of the major benefits of the investment." (Compl. ¶¶ 31, 43, 45) These allegations necessarily assume a purported failure to disclose that the AMPS might be, or would be, replaced with shorter term and/or higher cost leverage, since if such a disclosure had been made, no claim could exist. Stoody-Broser, 2009 WL 2707393, at *4

(purported breach of fiduciary claims asserted against trustee of assets invested in affiliated mutual funds inherently involved a failure of disclosure). Consequently, the Complaint asserts claims for the misrepresentation or omission of material facts within the meaning of SLUSA.

### C. SLUSA's "In Connection With" Requirement Also Is Met

The Complaint easily meets the requirement of SLUSA that a misrepresentation or omission of material fact be "in connection with" the purchase or sale of a covered security. The Supreme Court has construed the "in connection with" requirement broadly, holding that "it is enough that the fraud alleged 'coincide' with a securities transaction -- whether by the plaintiff or by someone else." Dabit, 547 U.S. at 85, 89. That unquestionably is the case alleged here, where the Complaint asserts that the Fund filed SEC reports and made public pronouncements concerning the allegedly "perpetual" nature of AMPS financing that was "a significant benefit[ ] of. . .[an]. . .investment" in the Fund's common shares. (Compl. ¶¶ 10, 12, 13, 31, 42, 45)

The Complaint attempts to evade SLUSA preclusion by defining a class consisting of "owners," rather than purchasers or sellers, of the Fund's common shares. (Compl. ¶ 35) As noted *supra* at 6, the Supreme Court squarely rejected such an attempted end-run around SLUSA in Dabit, holding that "[f]or purposes of SLUSA pre-emption, that distinction [between 'holders' and purchasers or sellers of securities] is irrelevant; the identity of the plaintiffs does not determine whether the complaint alleges fraud 'in connection with the purchase or sale' of securities." Dabit, 547 U.S. at 89. Under Dabit, the inquiry focuses on defendant's conduct, rather than the identity of the plaintiff. Rabin, 2007 WL 2295795, at *7.

The same principle disposes of Plaintiff's apparent contention that the "in connection with" requirement of SLUSA is not met as to *his* purchase of Fund common shares because *one* misrepresentation alleged in the Complaint (relating to what Plaintiff contends were the actual, undisclosed reasons for the redemption of the Fund's AMPS) was made after Plaintiff purchased

13

his Fund common shares. (Pl's Memo. at 6) Dabit makes clear that SLUSA applies even when *neither* the named plaintiff, *nor* any member of the class the named plaintiff purports to represent, was a purchaser or seller of securities at the time when alleged misrepresentations were made. Dabit, 547 U.S. at 74. This is the case because SLUSA precludes state law class actions even where the federal securities laws would not provide a would-be plaintiff with a private remedy. Id.[8] In Dabit, the Supreme Court made clear that the "in connection with" requirement is met, and SLUSA applies, where there is "deception 'in connection with the purchase or sale of any security,' not deception of an identifiable purchaser or seller." Id. at 85, citing United States v. O'Hagan, 521 U.S. 642, 658 (1997) (internal quotation omitted). Consequently, the timing of Plaintiff Brown's purchase of Fund common shares is irrelevant to SLUSA's application. U.S. Mortgage, 494 F. 3d at 842 (plaintiffs' contention that SLUSA did not apply because they did not purchase or sell securities in response to alleged misrepresentations was "the very argument that Dabit rejected").

And, in any case, Plaintiff does not contend that *each* of the misrepresentations alleged in the Complaint was made after his share purchase. Consequently, even if the timing of Plaintiff's purchase were a relevant consideration (and it is *not*), the occurrence of a single alleged misrepresentation after the purchase date would not render SLUSA inapplicable.

## **CONCLUSION**

The Complaint in this case is a paradigm of the kind of action which SLUSA was enacted to address. It is a Complaint which, prior to the adoption of the PSLRA, undoubtedly would

---

[8]  As the Seventh Circuit observed in Kircher v. Putnam Funds Trust, 403 F.3d 478 (2005), rev'd on other grounds, 547 U.S. 633 (2006), SLUSA's "preemptive effect is not confined to knocking out state-law claims by investors who have *winning* federal claims, as plaintiffs suppose. It covers both good and bad securities claims -- *especially* bad ones."

14

have been brought under the federal securities laws, and which now masquerades in state law costume only to avoid the requirements and strictures of the PSLRA. SLUSA squarely applies to, and authorizes the removal of, this purported class action. Plaintiff's motion to remand this case to the Circuit Court of Cook County therefore should be denied.

Dated: November 23, 2010

Respectfully submitted,

Weston W. Marsh, Joe F. Hanauer, John E. Neal, William R. Rybak, Stephen B. Timbers, David D. Tripple, and the Calamos Convertible Opportunities and Income Fund

By: /s/ John W. Rotunno
One of their attorneys

John W. Rotunno
Paul J. Walsen
Molly K. McGinley
K&L GATES LLP
70 West Madison Street, Suite 3100
Chicago, Illinois 60602
Telephone: 312.372.1121
Facsimile: 312.345.9060

Defendants John P. Calamos, Sr., Calamos Advisors LLC, and Calamos Asset Management, Inc.

By: /s/ Kevin B. Dreher
One of their attorneys

Kevin B. Dreher
MORGAN, LEWIS & BOCKIUS LLP
77 West Wacker Drive
Chicago, Illinois 60601-5094
Telephone: 312.324.1000
Facsimile: 312.324.1001

Christian J. Mixter (*pro hac vice*)
Patrick D. Conner (*pro hac vice*)
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004-2541
Telephone: 202.739.3000
Facsimile: 202.739.3001

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, certifies that he caused the foregoing *Joint Response of Fund Defendants and Calamos Defendants In Opposition to Motion to Remand* and the Exhibit thereto to be served automatically via CM/ECF to the following counsel of record:

Carol V. Gilden
Cohen Milstein Sellers & Toll PLLC
190 South LaSalle Street, Suite 1705
Chicago, Illinois 60603
cgilden@cohenmilstein.com

Steven J. Toll
Joshua S. Devore
Joshua M. Kolsky
Cohen Milstein Sellers & Toll PLLC
1100 New York Avenue, NW
Suite 500, West Tower
Washington, DC 20005
stoll@cohenmilstein.com
jdevore@cohenmilstein.com
jkolsky@cohenmilstein.com

Lynn L. Sarko
Keller Rohrback, P.L.C.
1201 Third Avenue, Suite 3200
Seattle, Washington 98101
lsarko@kellerrohrback.com

Gary Gotto
James A. Bloom
Keller Rohrback, P.L.C.
3101 North Central Avenue, Suite 1400
Phoenix, Arizona 85012
ggotto@krplc.com
jbloom@krplc.com

                                              /s/ John W. Rotunno
                                                John W. Rotunno